UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TYSON DONALD PERKINS,

            Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

            Defendant.

No. CV-13-0236-FVS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 20, 22.) Attorney Jeffrey Schwab represents plaintiff; Special Assistant United States Attorney Terrye Erin Shea represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.

## JURISDICTION

      Plaintiff Tyson Donald Perkins (plaintiff) protectively filed for disability insurance benefits (DIB) on December 2, 2010. (Tr. 189.) Plaintiff alleged an onset date of December 15, 2010. (Tr. 32, 165.) Benefits were denied initially and on reconsideration. (Tr. 120, 124.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Donna W. Shipps on February 28, 2012. (Tr. 32-93.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 36-42, 60-68, 70-82.) Medical expert Stephen Rubin, Ph.D. and vocational expert Daniel McKinney also testified. (Tr. 42-60, 69, 82-92.) The ALJ denied benefits (Tr. 15-26) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 33 years old at the time of the hearing. (Tr. 60.) He graduated from high school and attended some college. (Tr. 36, 328.) He has work experience as a football coach, security guard, nanny, room service provider and pantry cook for a hotel, receptionist, lead steward, desk clerk at a golf course, laborer, athletic shoes salesman, furniture assembler, warehouse administrator, wood and hardware salesman, shelf stocker, assembly line worker, airplane and truck loader, website builder, and warehouse driver and stocker. (Tr. 70-82.) He builds custom furniture in his garage a few hours a day. (Tr. 37.) He testified that in December 2010 he started having depression issues and cut his left arm on the inside and outside. (Tr. 36.) He has anxiety attacks, irrational thoughts, stress, and sometime wants to cut himself for relief. (Tr. 62.) He has been more irritable and had a lot more anxiety attacks. (Tr. 63.) He goes in his room to isolate himself from his children. (Tr. 63.) Noise triggers anxiety and irritability. (Tr. 64.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On

review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or

combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity since December 15, 2010, the alleged onset date. (Tr. 17.) At step two, the ALJ found plaintiff had the following severe impairments: generalized anxiety disorder and depression. (Tr. 17.) At step three, the ALJ found plaintiff does not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 18.) The ALJ then determined:

> [C]laimant had the residual functional capacity to perform a full range of work at all exertional levels. The claimant can remember locations and work-like procedures and understand, remember and carry out very short and simple as well as detailed instructions. He can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without[t] special supervision; make simple work-related decisions and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The claimant can interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. He can respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions and set realistic goals or make plans independently of others. The claimant works best in environments with superficial contact with supervisors, coworkers and the general public and where he would not be required to use public transportation.

(Tr. 20). At step four, the ALJ found plaintiff capable of performing past relevant work. (Tr. 24.) Thus, the ALJ concluded plaintiff was not under a disability as defined in the Social Security Act from December 15, 2010, through the date of the decision. (Tr. 26.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) improperly rejected the opinion of an examining psychologist; (2) improperly rejected lay witness statements; and (3) failed to conduct a proper step four analysis.[1] (ECF No. 20 at 7-19.) Defendant argues the ALJ: (1) reasonably assessed the examining psychologist opinion; (2) reasonably addressed the lay witness statements; and (3) reasonably assessed plaintiff's ability to perform past relevant work. (ECF No. 22 at 2-19.)

## DISCUSSION

**1.     Dr. Genthe**

---

[1] Plaintiff also initially alleged the ALJ erred at step three, but conceded the issue on reply. (ECF No. 20 at 13-15, ECF No. 23 at 5.)

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Genthe, an examining psychologist. (ECF No. 20 at 9-11.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Dr. Genthe examined plaintiff and prepared a psychological evaluation report in February 2011. (Tr. 324-34.) He diagnosed bipolar disorder; panic disorder with agoraphobia; social phobia; and personality disorder NOS. (Tr. 334.) He also indicated "rule out" diagnoses of learning disorder, malingering, cognitive disorder and impaired intellectual functioning.[2] (Tr.

---

[2] By specifying a diagnosis as only provisional, a clinician indicates "a significant degree of diagnostic uncertainty." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 5. A provisional diagnosis is rendered "when there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis." *Id.* at 3–4. A "rule out" diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out. *See U.S. v. Grape*, 549 F.3d 591, 593-94 n. 2 (3rd Cir. 2008); *Williams v. U.S.*, 747 F. Supp. 967, 978 n. 19 (S.D.N.Y 1990); *Simpson v. Comm.*, 2001 WL 213762, *7-8 (D. Or. 2001) (unpublished opinion). *See also* Wayne G. Siegel, *Differential Diagnosis of Substance Use Disorders and Other Psychiatric Disorders,* Gary L. Fischler and Associates, PA, www.psycheval.com/substance%20_use_disorders.shtml (last visited September 19, 2014) ("Although not part of the formal DSM-IV convention, many clinicians use the term 'rule out'

334.) Dr. Genthe noted plaintiff's mental health appeared mild to moderately well managed with medication. (Tr. 334.) Some signs of exaggeration of psychological problems were observed. (Tr. 334.) Dr. Genthe reported plaintiff made a number of vague claims and gave brief and vague responses. (Tr. 334.) When prompted to elaborate, plaintiff was "repeatedly unable to provide relevant support." (Tr. 334.) Dr. Genthe also observed plaintiff did not appear to bring forth his best effort on testing and his responses were unusually poor. (Tr. 334.) Dr. Genthe concluded the results of the Wechsler test were unlikely reflective of plaintiff's true cognitive abilities and indicated personality and validity testing would be helpful. (Tr. 334.) Socially, Dr. Genthe assessed plaintiff's ability to interact appropriately with the public, get along with coworkers or peers and ability to respond to criticism from supervisors is poor. (Tr. 334.) Dr. Genthe opined plaintiff is unlikely to function adequately in a work setting until his symptoms have been managed more effectively. (Tr. 334.)

Plaintiff asserts the ALJ failed to provide any valid reasons for rejecting the opinion of Dr. Genthe. (ECF No. 20 at 9.) The ALJ gave three reasons for giving little weight to Dr. Genthe's opinion. The ALJ said, "Considering Dr. Genthe's observations about poor effort and exaggeration of psychologically based problems, as well as the inconsistent treatment record and long history of employment while enduring the same conditions, the undersigned gives [Dr. Genthe's] conclusions little weight." (Tr. 24.)

First, the ALJ gave little weight to Dr. Genthe's opinion because plaintiff demonstrated poor effort and exaggeration of psychologically based symptoms. (Tr. 24.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. Exaggeration of symptoms suggests a lack of credibility, and the ALJ made a negative credibility finding which is not challenged by plaintiff.[3]

---

just prior to a diagnosis to indicate that not enough information exists to make the diagnosis, but it must be considered as an alternative.").

[3] If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of

(Tr. 24-26.) Dr. Genthe stated the objective test results are unlikely reflective of plaintiff's true cognitive abilities and assessed no cognitive limitations. (Tr. 334.) Dr. Genthe also observed some signs of exaggeration of psychological symptoms. (Tr. 334.) Notwithstanding, Dr. Genthe assessed poor ability to interact appropriately with the public, poor ability to get along with coworkers and peers, and poor ability to respond appropriately to criticism from supervisors. (Tr. 334.) The ALJ pointed out other evidence conflicts with claims of social difficulties. (Tr. 21-23.) As a result, the ALJ reasonably rejected Dr. Genthe's findings because of plaintiff's exaggeration and poor effort.

The other reasons cited by the ALJ for rejecting Dr. Genthe's opinion are relevant to plaintiff's credibility rather than the reliability or validity of Dr. Genthe's findings. The ALJ cited plaintiff's inconsistent treatment record as a reason for rejecting Dr. Genthe's opinion. (Tr. 24.) An ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). When there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *See Molina v. Astrue*, 674 F.3d 1104, 1113 -1114 (9th Cir. 2012); S.S.R. 96-7p. The ALJ correctly points out there are significant gaps in treatment.[4] (Tr. 22.) However, this has little

---

malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ cited a number of legally sufficient reasons supported by substantial evidence in the record to justify the negative credibility finding. (Tr. 21-23.)

[4] Plaintiff saw counselor Chad Davis monthly from August 2010 to December 2010. (Tr. 269-73.) Plaintiff next saw Mr. Davis in July 2011, then another gap occurred before plaintiff saw counselor Julirae Gunter-Castleton in January 2012. (Tr. 344-45.) The ALJ found it "somewhat suspicious" that plaintiff began seeing Ms. Gunter-Castleton for therapy sessions shortly after his hearing date was set and inferred "an attempt to bolster his records" before the hearing. (Tr. 22.) The ALJ also pointed out that although plaintiff reported intentionally cutting himself, there were no instances of hospitalization due to mental health impairments. (Tr. 22.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

do with Dr. Genthe's findings and is more relevant to plaintiff's credibility.[5] The credibility finding is not disputed and the ALJ's interpretation of that evidence is reasonable. Plaintiff's lack of treatment should have little effect on the weight given to Dr. Genthe's findings. Thus, this is not a specific, legitimate reason for rejecting Dr. Genthe's opinion.

Similarly, the ALJ cited plaintiff's long history of employment while enduring the same conditions alleged to be disabling as another reason for rejecting Dr. Genthe's conclusions. (Tr. 24.) In making a credibility assessment, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ observed that even though plaintiff has a history of somewhat short-lived jobs, he was able to make a significant amount of money during the three or four years before the alleged onset date during which he alleged a worsening of his condition. (Tr. 21.) Plaintiff argues that, despite his income, his previous work reflects his limitations because he never held a job for more than a few months at a time. (ECF No. 20 at 10.) Regardless, this is an issue pertaining to credibility and is not relevant to the weight assigned to Dr. Genthe's opinion. Thus, this is not a specific, legitimate reason for rejecting the opinion.

The ALJ cited a specific, legitimate reason for rejecting Dr. Genthe's opinion and therefore did not err. However, even if the ALJ erred in rejecting Dr. Genthe's opinion, the error would be harmless. Harmless error occurs when an error is inconsequential to the ultimate nondisability determination. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). The vocational expert

---

[5] Plaintiff asserts the gaps in treatment were due to a lack of funds and points to a December 2010 chart note indicating plaintiff was "self pay." (ECF No. 20 at 10, Tr. 287.) Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Defendant points out the ALJ observed plaintiff's earnings "in those three to four years of alleged increased symptomatology should have enabled him to seek some level of appropriate care, especially if the symptoms were a limiting as claimed." (Tr. 22.) Plaintiff does not address or rebut this assertion. *See Fair*, 885 F.2d at 603. Notwithstanding, the ALJ cited several additional reasons supporting the negative credibility finding which are supported by substantial evidence.

testified that there would be jobs a person can do even with the limitations on public contact and contact with supervisors and coworkers identified by Dr. Genthe. (Tr. 91-92.) Thus, even if the ALJ erred and the opinion was credited, the finding that plaintiff can perform past relevant work would not change. As a result, any error would be harmless. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (where corrected error does not change the outcome, the error is harmless).

### Lay Witness

Plaintiff argues the ALJ improperly rejected the lay statements of plaintiff's wife. (ECF No. 20 at 11-13.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Plaintiff's wife, Liane Perkins, completed third party function report forms in January 2011 and March 2011. (Tr. 213-20, 237-44.) In the January 2011 function report, Ms. Perkins reported plaintiff experiences anxiety attacks when interacting with others or when plaintiff perceives stressful conditions or scrutiny. (Tr. 213.) She reported plaintiff has not problems with personal care and does some chores. (Tr. 214-16.) Ms. Perkins stated plaintiff has always been this way, but has grown increasingly worse. (Tr. 218.) She noted limitations primarily in getting along with others and reported plaintiff cannot spend even small amounts of time with others without becoming increasingly irritable and anxious. (Tr. 218.) Similarly, in March 2011, Ms. Perkins reported that interacting with others or even thinking about doing so causes great stress. (Tr. 237.) She indicated that no matter how easy a job is or how well he likes and gets along with his coworkers or employers, he always "spirals into a depression and out of control within a few weeks." (Tr. 237.) She reported limitations in memory, completing tasks and getting along with others. (Tr. 242.)

The ALJ found Ms. Perkins' statements "are accepted as descriptive of Mrs. Perkins perceptions" but the behaviors observed are "not fully consistent with other evidence of record." (Tr. 21.) Inconsistency with medical evidence is a germane reason for rejecting lay witness

evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). When an ALJ provides clear and convincing reasons for rejecting a claimant's own subjective complaints and when the lay witness's testimony is similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony. *See Valentine,* 574 F.3d at 694. The ALJ described in detail other evidence in the record inconsistent with plaintiff's allegations and therefore inconsistent with Ms. Perkins' statements. (Tr. 18-24.) Plaintiff cites numerous points in the record and asserts this evidence is consistent with the lay witness statements. (ECF No. 20 at 12.) Many of these factors were discussed by the ALJ or are based on plaintiff's own statements, which were determined by the ALJ to be less than fully credible.[6] Furthermore, plaintiff argues for another interpretation of the evidence but does not establish that the ALJ erred in fact or law in analyzing the evidence. The ALJ, not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); see also *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750. As a result, the ALJ cited a germane reason supported by substantial evidence for rejecting Ms. Perkins' statements.

2.     **Step Four**

Plaintiff argues the ALJ failed to make a proper step four assessment. (ECF No. 20 at 15-19.) At step four, the ALJ must examine a claimant's RFC and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). RFC is what an individual can still do despite his or her limitations. S.S.R. 96-8p.[7] If a claimant is able to perform his or her

---

[6] For example, plaintiff cites the findings of Dr. Genthe and reviewing psychologists Dr. Kester and Dr. Kraft. (ECF No. 20 at 12, citing Tr. 334, 99, 102, 113-116, 118.) As discussed *supra*, Dr. Genthe's findings were properly rejected by the ALJ and, notwithstanding, were also consistent with the vocational expert's testimony. The findings of Drs. Kester and Kraft were discussed by the ALJ and weighted appropriately and plaintiff does not challenge the ALJ's consideration of that evidence. (Tr. 24.)

[7] Social Security Rulings are issued to clarify the Commissioner's regulations and policy. They are not published in the federal register and do not have the force of law. However, under case

previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact:

    a.    A finding of fact as to the individual's RFC;

    b.    A finding of fact as to the physical and mental demands of the past job/occupation; and

    c.    A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

S.S.R. 82-62. The burden of proof lies with the Plaintiff at step four, but the ALJ still has a duty to make the requisite factual findings to support his conclusions. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); S.S.R. 82-62. Plaintiff asserts the ALJ erred at each part of the step four analysis. (ECF No. 20 at 15-19.)

    **a.**    **RFC**

Plaintiff first argues the ALJ failed to include all of plaintiff's limitations in the RFC finding. (ECF No. 20 at 16.) Plaintiff argues the ALJ improperly ignored IQ testing indicating extremely low intellectual functioning. (ECF No. 20 at 16.) In reply briefing, plaintiff concedes he erroneously construed Dr. Genthe's memory subtest score as an IQ score. (ECF No. 23 at 5.) Thus, the ALJ did not err on this issue.

Plaintiff also argues the ALJ improperly failed to include limitations relating to concentration, persistence and pace in the RFC finding. (ECF No. 20 at 16.) Plaintiff points out the psychological expert, Dr. Rubin, whose opinion the ALJ gave great weight, found moderate limitations in activities of daily living and moderate limitations in concentration, persistence and pace. (ECF No. 20 at 16.) However, the testimony referenced by plaintiff was Dr. Rubin's analysis of the "B" criteria, not an RFC assessment. (Tr. 46.) Adjudicators are required to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. S.S.R. 96-8p. The limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC

---

law, deference is to be given to the Commissioner's interpretation of the Regulations. *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. *Id.* The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments. *Id.* Thus, when Dr. Rubin was asked about the B criteria, the moderate restrictions in daily living and social functioning he mentioned were not part of his assessment of plaintiff's residual functional capacity. (Tr. 46.) Therefore, the ALJ did not err by not including these moderate limitations in the RFC.

Plaintiff asserts "every examining and reviewing source in the record found at least moderate limitations in concentration, persistence and pace." (ECF No. 20 at 17, citing Tr. 46, 99, 113, 334.) In addition to the findings of Dr. Rubin discussed *supra*,[8] plaintiff cites Drs. Kester and Kraft, who reviewed the record. Plaintiff again cites B criteria findings of moderate limitations which are not properly part of the RFC finding. (Tr. 99, 113.) In assessing plaintiff's residual functional capacity, Dr. Kester and Dr. Kraft each found, "Claimant able to sustain focus and concentration sufficiently to complete tasks, however, will maintain follow through better performing less complex tasks." (Tr. 101, 115.) This is consistent with the RFC finding. (Tr. 20.) Plaintiff also cites Dr. Genthe's opinion, but Dr. Genthe assessed only social limitations and no limitation on concentration, persistence and pace. (Tr. 334.) Thus, there is no basis for residual functional capacity limitations on concentration, persistence and pace and the ALJ did not err.

Plaintiff next points out Dr. Rubin agreed with Dr. Genthe regarding several areas of poor functioning. (ECF No. 20 at 16.) Dr. Rubin agreed with Dr. Genthe's assessment that plaintiff's social abilities are poor and assessed moderate social limitations. (Tr. 49, 53.) As discussed *supra*, the social limitations identified by Dr. Genthe are consistent with the vocational expert's testimony that work would not be precluded. (Tr. 91-92, 334.) The ALJ also included social limitations in the RFC. As a result, there is no error.

---

[8] Additionally, the ALJ discussed the moderate limitations assessed by Dr. Rubin and explained his finding of a mild limitation on concentration, persistence and pace under the "B" criteria. (Tr. 18-19.) The ALJ cited several specific, legitimate reasons for rejecting that portion of Dr. Rubin's opinion and plaintiff does not address or challenge those reasons. As a result, there is no error.

Plaintiff further argues the record indicates that Mr. Perkins would miss work due to his depression and anxiety. (ECF No. 20 at 16.) The only evidence plaintiff points to as establishing difficulty with work attendance is Dr. Rubin's qualified comment that, "he may have periods of such severe anxiety that the absenteeism might be a real problem." (ECF No. 20 at 16, Tr. 48.) However, Dr. Rubin also testified that plaintiff would have the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance. (Tr. 48.) Furthermore, while reviewing Dr. Kraft's residual functional capacity finding, Dr. Rubin did not disagree with Dr. Kraft's conclusion that plaintiff is not significantly limited in the ability to perform in a schedule and maintain regular attendance. (Tr. 52-53, 115.) It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). To the extent Dr. Rubin's testimony could be construed as ambiguous regarding plaintiff's need to miss work, the ALJ reasonably resolved the issue because Dr. Rubin twice indicated no limitation regarding attendance. As a result, the ALJ did not err by failing to include a limitation on attendance in the RFC.

      **b.**     **Past Relevant Work**

Next, plaintiff argues the ALJ failed to identify the specific demands of plaintiff's past relevant work as required by S.S.R. 82-62. (ECF No. 20 at 17.) Plaintiff notes the ALJ identified four past jobs that plaintiff could perform: construction laborer, furniture builder, material handler, and lift assembler. (ECF No. 20 at 17, citing Tr. 24.) Plaintiff asserts, "there is no discussion of the specific demands of these jobs anywhere in the ALJ's decision." (Tr. 17.) However, plaintiff apparently overlooked the ALJ's discussion of each job at page 25 of the transcript.[9] The ALJ stated, "Because the claimant has a number of past jobs, the following summarizes the evidence showing how those that are within the residual functional capacity qualify as relevant, refering [sic] to testimony, work history reports and earnings records where

---

[9] Defendant pointed out the ALJ's discussion of past relevant work in summary judgment briefing, but plaintiff failed to acknowledge or responsively address the findings in reply briefing. (ECF No. 22 at 18; ECF No. 23 at 6.)

appropriate." (Tr. 25.) The ALJ then listed each job, the length of time performed, the SVP, and earnings for each position and cited the exhibits from which this data was collected. (Tr. 25.) As a result, the ALJ adequately met the requirement to make a finding of fact as to the physical and mental demands of plaintiff's relevant past jobs.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

### c. RFC and Past Relevant Work Compared

Lastly, plaintiff argues the ALJ failed to properly compare the claimant's RFC with the specific demands of plaintiff's past relevant work as required by S.S.R. 82-62. (ECF No. 20 at 17.) The ALJ stated, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The vocational expert's testimony was consistent with the DOT." (Tr. 25.) Plaintiff cites *Pinto v. Massanari* and asserts the ALJ "improperly allowed the assessment to take place in the vocational expert's head." (ECF No. 20 at 17, citing 249 F.3d 840.) However, *Pinto* holds that an ALJ may rely on a job description in the Dictionary of Occupational Titles which is not consistent with a claimant's identified limitations only when the ALJ definitively explains this deviation. 249 F.3d at 847. In this case, the vocational expert testified his testimony did not deviate from the DOT and the ALJ also made that finding. (Tr. 25, 89.) As a result, the vocational expert made no assessment "in his head" which is not verifiable by consulting the DOT. Plaintiff has failed to identify any deviation from the DOT with respect to limitations established by the record and plaintiff's past relevant work. *Pinto* is therefore inapplicable on this issue. As a result, the ALJ's comparison of RFC and past relevant work is adequately supported.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 22)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 20)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED September 29, 2014

                         *s/Fred Van Sickle*
                         Fred Van Sickle
                         Senior United States District Judge